## AMERICAN HARDWARE & EQUIPMENT CO. v. COMMISSIONER OF INTERNAL REVENUE.

No. 6520.

United States Court of Appeals
Fourth Circuit.

Argued Jan. 7, 1953.

Decided Feb. 17, 1953.

David H. Henderson, Charlotte, N. C. (Henderson & Henderson, Charlotte, N. C., on brief), for petitioner.

Harry Marselli, Special Asst. to the Atty. Gen. (Charles S. Lyon, Asst. Atty. Gen., Ellis N. Slack and Lee A. Jackson, Special Assts. to the Atty. Gen., on brief), for respondent.

Before PARKER, Chief Judge, and SOPER and DOBIE, Circuit Judges.

SOPER, Circuit Judge.

This petition for review involves the Commissioner's determination of deficiencies in income tax for the fiscal years ending June 30, 1947 and June 30, 1948, of the American Hardware & Equipment Co., growing out of deductions of $1,800 and $1,500, respectively, claimed by the taxpayer on account of contributions made to National Tax Equality Association of Chicago, Illinois. The question presented is whether these payments were deductible from gross income either as ordinary and necessary expenses, under § 23(a)(1)(A), or as contributions, under § 23(q)(2) of the Internal Revenue Code, 26 U.S.C.A. § 23 (a)(1)(A), (q)(2), to a corporation organized and operated exclusively for scientific or educational purposes, no part of the net earnings of which inures to the benefit of any private shareholder or individual, and, no substantial part of the activities of which is carrying on propagan-da, or otherwise attempting to influence legislation.

The Tax Court sustained the determinations of the Commissioner upon the following findings of fact:

Taxpayer is a North Carolina corporation. Since its incorporation in 1917 it has engaged in the wholesale hardware business in the states of North Carolina and South Carolina.

Taxpayer kept its books on a fiscal year basis ending June 30. Its returns for the taxable period involved were filed with the collector of internal revenue for the district of North Carolina at Greensboro, North Carolina.

Prior to and during the taxable years in question taxpayer was faced with competition from other distributors, one of which was Farmer's Cooperative Exchange.

On its tax returns for the fiscal years ended June 30, 1947 and June 30, 1948 the taxpayer claimed as deductions the respective amounts of $1,800 and $1,500, representing contributions made by it to National Tax Equality Association. In determining his deficiency for the taxable years 1947 and 1948 the collector disallowed the entire amounts claimed on the ground they did not constitute proper deductions.

National Tax Equality Association, hereinafter referred to as NTEA, is a nonprofit corporation organized under the laws of the State of Illinois in October 1943. Its articles of incorporation provide that the objects and purposes for which it was organized are—* * * to conduct educational, scientific and research activities relative to disparities in federal and state tax statutes and other laws and regulations affecting business, and to disseminate such information to civic organizations and representatives of business affected thereby, to the public and to federal and state governments. The Corporation shall be non-sectarian, non-partisan, and no part of the net earnings, if any, of the Corporation shall inure to the benefit of any private shareholder or individual.

NTEA was first ruled exempt from taxation under section 101(6) but at its request

was later ruled exempt as a business league under section 101(7) of the Internal Revenue Code. 26 U.S.C.A. § 101(6, 7).

The suggestion that taxpayer make contributions to the NTEA came from taxpayer's president, L. D. Nuchols. He was elected a director of NTEA for the years 1947 and 1948, but did not attend any of the directors' meetings. Taxpayer's directors did not adopt any resolution authorizing the contributions made by the taxpayer to NTEA but informally approved the suggestion to its president.

NTEA was organized and primarily operated from its inception, and during the taxable years in question for the carrying on of propaganda with the ultimate objective being a revision in tax structure.

On these facts the Tax Court held that the contributions of the taxpayer to the Association were not deductible, following its decision upon the identical issue in Roberts Dairy Co. v. Commissioner, T. C. Memo 1951, which was affirmed by the Court of Appeals of the Eighth Circuit, 195 F.2d 948.

■ The principal contention of the taxpayer in the pending case is that no substantial evidence was presented to the Tax Court to justify its crucial finding of fact that the National Tax Equality Association "was organized and primarily operated from its inception and during the taxable years in question for the carrying on of propaganda with the ultimate objective being a revision in tax structure." The taxpayer offered evidence that it was greatly hindered in its business by competition with cooperative business organizations which enjoyed a tax-free status and were thus enabled to undersell individual business corporations. The point was emphasized by statistics showing tremendous expansion of Cooperatives during the period 1929 to 1947. Hence it became necessary for the taxpayer in its judgment to obtain information as to the mode of operation and financial structure of this type of competitor, and it found that the information could be best obtained at the lowest cost through the Association. For this reason the taxpayer and other individual business corporations contributed to the work of the Association and in return received information and material which they have used to carry their story to the merchants from whom they purchased and to the customers to whom they sell their merchandise, appealing to them and to the general public to adopt a sympathetic attitude toward the competitive difficulties which they were experiencing.

The taxpayer also emphasized testimony tending to show that the literature furnished by the Association during the tax years in question did not dwell upon the influencing of legislation as an objective and did not call upon the members to write to Congressmen or intervene in legislative matters; and that neither the Association nor the taxpayer had a lobby in Washington or approached members of Congress to secure changes in tax laws.

The taxpayer specifically contends that the Tax Court made use of inadmissible evidence in reaching its findings in that it took into consideration the contents of publications bearing the name of the Association and purporting to emanate from its Chicago office without vouching for them by an identifying witness or giving the taxpayer an opportunity for cross examination. We need not, however, pass upon these formal objections to evidence since full support of the Tax Court's finding is contained in publications of the Association offered in evidence as exhibits by the taxpayer itself. They include printed pamphlets prepared by the Research Department of the Association which were published under various captions and which purported among other things, to contain information on legal tax dodging and its affects on growth and competition, facts submitted to the House Ways and Means Committee of Congress, showing how the federal income tax avoidance by cooperative corporations depletes government revenues and creates unfair competition with taxpaying business. These publications also disclose cooperative expansion in the petroleum industry, a factual description of super-cooperative corporations engaged in wholesale purchas-

ing and purport to show the effects of legal tax avoidance and tax-free accumulations upon federal revenue and upon the expansion of cooperative purchasing in competition with taxpaying enterprise. Confining consideration to the evidence offered by the taxpayer alone, it is obvious that the Association has been primarily operated for the issuance of propaganda with the ultimate objective of securing a revision in the tax structure, and has endeavored to carry out the objects and purposes set out in its charter, to conduct educational and research activities relative to the disparities in federal and state statutes affecting business and to disseminate information to civic organizations and representatives of business affected thereby and to the public and to federal and state governments. No further statement is needed to show that the Tax Court's findings of fact were abundantly supported by the evidence.

This being so, we need do no more than follow the reasoning of the Supreme Court in Textile Mills Securities Corp. v. Commissioner, 314 U.S. 326, 62 S.Ct. 272, 86 L.Ed. 249, where it was specifically held that the expenses of lobbying and propaganda, paid by a corporation employed by certain German textile interests to secure legislation from Congress authorizing the recovery of German properties seized during the First World War, were not deductible. In this decision the court approved Art. 262 of Treasury Regulations 74, promulgated under the Revenue Act of 1928, which declared that corporations were not entitled, like individuals, to deduct from gross income contributions or gifts to charitable or educational institutions under § 23(n) of the statute, but only contributions to such institutions as were connected with the operations of their business. 314 U.S. 336–337, 62 S.Ct. 272; and that, even in this category, sums of money expended for lobbying purposes, the promotion or defeat of legislation, or the exploitation of propaganda, were not deductible from gross income. The court further held that this limitation on corporate contributions was applicable to § 23(a)

of the statute, relating to ordinary and necessary business expenses, and that it was frivolous to contend that the limitation was not applicable to such expenses because it was included as a regulation under § 23(n) but was not specifically included as a regulation under § 23(a) of the Act. The Court said:

"  *   *   *   The words 'ordinary and necessary' are not so clear and unambiguous in their meaning and application as to leave no room for an interpretative regulation. The numerous cases which have come to this Court on that issue bear witness to that. Welch v. Helvering, 290 U.S. 111, 54 S.Ct. 8, 78 L.Ed. 212; Deputy v. DuPont, 308 U.S. 488, 60 S.Ct. 363, 84 L.Ed. 416, and cases cited. Nor has the administrative agency usurped the legislative function by carving out this special group of expenses and making them non-deductible. We fail to find any indication that such a course contravened any Congressional policy. Contracts to spread such insidious influences through legislative halls have long been condemned. Trist v. Child, 21 Wall. 441, 22 L.Ed. 623; Hazleton [Hazelton] v. Checkells, [Sheckells] 202 U.S. 71, 26 S.Ct. 567, 50 L.Ed. 939. Whether the precise arrangement here in question would violate the rule of those cases is not material. The point is that the general policy indicated by those cases need not be disregarded by the rule-making authority in its segregation of non-deductible expenses. There is no reason why, in absence of clear Congressional action to the contrary, the rule-making authority cannot employ that general policy in drawing a line between legitimate business expenses and those arising from that family of contracts to which the law has given no sanction. The exclusion of the latter from 'ordinary and necessary' expenses certainly does no violence to the statutory language. The general policy being clear it is not for us to say that the line was too strictly drawn." 314 U.S. 338, 339, 62 S.Ct. 279.

■ In the same way we apply to the facts in the pending case Treasury Regulation 111, promulgated under the Internal Revenue Code, wherein § 29.23(q)-(1) states that "sums of money expended for lobbying purposes, the promotion or defeat of legislation, the exploitation of propaganda, including advertising other than trade advertising, and contributions for campaign expenses are not deductible from gross income."

We find no substance in the taxpayer's objection that the quoted regulation is not applicable to ordinary business expenses under § 23(a) for the reason that it is not specifically appended to § 23(a), nor in the additional objection that the decision in Textile Mills Corp. v. Commissioner, is limited to the non-deductibility of items which are against public policy or are morally wrong. Both of these objections are clearly untenable under that decision.

Since the contributions of the taxpayer were made to an organization which is obviously engaged in the issuance of propaganda intended to influence tax legislation, they are not deductible either under § 23(a) or § 23(n) of the Internal Revenue Code, the limitation contained in the regulation being applicable to both of these paragraphs of the section.

The decision of the Tax Court is therefore affirmed.